## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| **WILLIE ANDREW COLE,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| **v.** ) | **Case No. 3:12-cv-00704** |
| ) | **Judge Campbell** |
| **JERRY LESTER, Warden,** ) | |
| ) | |
| **Respondent.** ) | |

## M E M O R A N D U M

## I.    INTRODUCTION AND BACKGROUND

The petitioner, Willie Andrew Cole,[1] has filed a *pro se* petition for a writ of *habeas corpus*

under 28 U.S.C. § 2254.  (Docket No. 1).  The petitioner is an inmate at the Turney Center Industrial

Complex in Only, Tennessee.  The petitioner challenges the legality of his confinement under  a

2007 judgment of the Criminal Court of Davidson County, Tennessee, convicting him of first degree

murder and tampering with evidence.  *State v. Willie Andrew Cole,* No. M2007-02896-CCA-R3-CD,

2009 WL 1676054 (Tenn. Crim. App. June 16, 2009), *perm. app. denied* (Tenn. Oct. 26, 2009).  The

trial court sentenced Cole as a repeat violent offender to concurrent terms of life imprisonment

without the possibility of parole and six years imprisonment.  (*Id*.)

Cole  appealed his sentence to the Tennessee Court of Criminal Appeals.   (Docket No. 35,

Attach. 9).  On June 16, 2009, the appellate court affirmed the trial court's judgment.  (*Id*., Attach.

---

[1] Throughout this memorandum, Willie Andrew Cole is referred to as "petitioner," "defendant," and "appellant" interchangeably.

11).  Cole filed an application seeking discretionary review by the Tennessee Supreme Court, which the court denied on October 26, 2009.  *(Id.)*

On September 23, 2010, Cole filed a petition for post-conviction relief in the Davidson County Criminal Court.  (Docket No. 35, Attachs. 13-16).  Cole sought relief on the basis that he received ineffective assistance of counsel.  (*Id*.)  After an evidentiary hearing, the post-conviction court denied relief on April 18, 2011.  (*Id*.)

Cole appealed (*Id*., Attach. 17) and, on January 25, 2013, the Tennessee Court of Criminal Appeals affirmed the post-conviction court's denial of relief.   (*Id*., Attach. 19).  Cole filed an application for discretionary review in the Tennessee Supreme Court. (*Id*., Attach. 20).  On June 19, 2013, the Tennessee Supreme Court issued an order denying Cole's application.  *Willie A. Cole v. State,* No. M2011-01676-CCA-R3-PC, 2013 WL 310208 (Tenn. Crim. App. Jan. 25, 2013), *perm. app. denied* (Tenn. June 19, 2013).  Cole did not file a petition for writ of certiorari in the United States Supreme Court.

On July 12, 2012, Cole timely filed the instant *pro se* petition for writ of *habeas corpus*. (Docket No. 1).[2]   In his petition, he asserts ineffective assistance of counsel as his basis for relief. The petitioner names Jerry Lester, the Warden of the Turney Center Industrial Complex, as the respondent.

Upon receipt of Cole's petition, the court conducted a preliminary examination of the petition and determined that Cole had stated a colorable claim for relief.  Accordingly, the court entered an order directing the respondent to answer or otherwise respond to the petition.  (Docket No. 11).  The

---

[2]  This case was initially held in abeyance pending the conclusion of the petitioner's state post-conviction proceedings and was reopened on motion of the petitioner.  (Docket Nos. 4, 11).

respondent filed an answer urging the court to deny the petition and dismiss the action.  (Docket No. 34).  The petitioner has not filed a reply in opposition to the respondent's motion to dismiss.

Upon consideration of the record, the court concludes that an evidentiary hearing is not needed.  *See Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003)(an evidentiary hearing is not required when the record conclusively shows that the petitioner is not entitled to relief).  Therefore, the court shall dispose of the petition as the law and justice requires.  Rule 8(a), Rules — § 2254 Cases.

Jurisdiction and venue in this court are appropriate under 28 U.S.C. § 2241(d) because the petitioner was convicted in the Criminal Court for Davidson County, Nashville, Tennessee.

## II.    SUMMARY OF THE EVIDENCE

A detailed summary of the evidence adduced at the petitioner's trial and post-conviction hearing is set forth in detail in the post-conviction opinion of the Tennessee Court of Criminal Appeals as follows:[3]

> On June 19, 2005, Martha Banks [the victim's daughter] discovered her father, seventy-one-year-old Joseph Banks, dead of multiple stab wounds in his Nashville apartment.  The sixty-five-year-old [petitioner] lived in the next-door apartment of the high-rise retirement building, Edgefield Manor, and was interviewed by police investigators as part of their canvass of the building.  During the interview, which took place in the [petitioner's] apartment, a police investigator noticed that the [petitioner's] boot tread appeared to match a bloody shoe print found in the victim's apartment.  The [petitioner] consented to a search of his apartment and turned over to the investigator his recently polished boots, which tested positive for the presence of the victim's blood.  A subsequent search of his

---

[3]  The factual findings of the state appellate court are presumed to be correct.  28 U.S.C. § 2254(e)(1)("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

apartment uncovered, among other things, three bottles of shoe polish and four bottles of bleach as well as signs of the kitchen floor's having been recently bleached. Through conversations with other residents of the building, investigators learned that the [petitioner] had been extremely jealous and possessive of his girlfriend, had accused the victim of having an affair with her, had threatened and assaulted the victim in the past, and had stated his intention of killing the victim in the week preceding the murder....

*State v. Willie Andrew Cole*, No. M2007–02896–CCA–R3–CD (Tenn. Crim. App., at Nashville, June 16, 2009). Based upon these facts, the petitioner was indicted by a Davidson County grand jury for premeditated first degree murder and tampering with evidence. Following a trial by jury, the defendant was convicted as charged. Thereafter, he was sentenced as a repeat violent offender to concurrent terms of life without the possibility of parole for the murder conviction and six years for the tampering with evidence conviction. Additionally, the sentences were ordered to be served consecutive to a prior life sentence for murder which the petitioner had been on parole for. Following the denial of his motion for new trial, the petitioner filed a direct appeal with this court, after which the convictions and sentences were affirmed. *Id.*

Next, the petitioner filed a timely pro se petition for post-conviction relief, asserting approximately fifty instances of what he alleged were ineffective assistance of counsel. Following the appointment of counsel, an amended petition was filed with the court. A hearing was held on two separate days, at which the petitioner, trial counsel, the initial attorney appointed in his case, and the housing manager from the petitioner's and the victim's apartment complex testified.

Ms. Ava Christian testified that she was employed by Metro Development Housing as the house manager at Edgeville Manor, the complex where the petitioner and the victim had both resided. She recalled that she had spoken with several different investigators following the incident. She also indicated that she was subpoenaed to testify at trial, but she was never called as a witness. Ms. Christian testified that she had tried to review the petitioner's file in anticipation of testifying at the hearing but noted that it was very large.

Ms. Christian did not find any record of or recall an incident where Ms. Pam Wilson or Mr. Henry Dean had reported to her that the petitioner had threatened to kill the victim. She stated that, if

someone had done so, she would have instructed them to contact the police. Ms. Christian also testified that she did recall complaints against the petitioner by Ms. Wilson because the petitioner was constantly arguing with his girlfriend. While she never officially cited the petitioner, she did speak with him about his drinking.

> Also testifying at the hearing was the assistant pubic defender who was initially appointed to represent the petitioner in the case. She stated that she was appointed early in the case and continued to represent the petitioner until a time near the start of the trial. She indicated that she was removed from the case, at the petitioner's request, in order to allow the petitioner to have new counsel in whom he could have confidence. Initial counsel stated that, following her withdrawal from the case, she would have made her file available to trial counsel for copying. She also testified that the original file in the case had been misplaced after she left the Public Defender's Office, and she was unable to recall specific details on certain matters. The office had attempted to make a duplicate file with the information which they were able to obtain.

Initial counsel recalled attending the petitioner's parole revocation hearing in his separate case, which contained information relevant to the investigation of the instant murder. She further recalled that she was given great leeway in questioning the detective who investigated the petitioner's pending murder charge, and she considered this information to be an excellent source of discovery. Although she could not recall the specifics, the duplicate file in her possession indicated that the tape of the parole revocation hearing had been requested but not received. Thus, she was unable to ascertain whether trial counsel had this information. Initial counsel also recalled that she had filed an ex parte motion for funds to secure expert assistance for DNA analysis with regard to the petitioner's boots. Although the

order was granted, no expert was ever employed, and she could not recall the reason. Moreover, she could recall no specific conversations with trial counsel which might have occurred on the subject.

Trial counsel testified that he took over the petitioner's representation after initial counsel was removed. He stated that he met with the petitioner on several occasions and reviewed all discovery materials with him. Trial counsel testified that the theory of the case was always one of innocence as the petitioner claimed he was not present at the time of the crime. The services of an investigator were employed in preparation of the case. At some point, a motion was made to allow trial counsel's removal per the petitioner's request. However, the motion was not well-taken by the trial court, and he continued his representation through the direct appeal of his conviction.

With regard to Ms. Christian, trial counsel testified that she was interviewed by the defense investigator and stated that she was aware of no problems between the petitioner and the victim. During the trial, trial counsel intended to call her as a defense witness. However, upon expressing his intent to do so, he was presented with certain materials from the State which changed his mind, as they were not favorable to the petitioner's case.

Trial counsel testified that he was aware that there were three different times of death referenced in the case materials. The indictment alleged one day, an estimate by the medical examiner indicated another, and finally the date that the petitioner was discovered and pronounced dead was mentioned. The petitioner requested that he file a bill of particulars in order to ascertain the exact time of death. When trial counsel did not do so, the petitioner filed a motion pro se, which was never addressed by the court. Trial counsel indicated he saw no need for such a motion, as he believed it added an ambiguity in the State's case. He did acknowledge that the petitioner had alibis for brief periods of the relevant time. Specifically, trial counsel recalled viewing a surveillance video from a liquor store that was taken at around one of the later noted times of death. However, trial counsel did not feel the tape was sufficient to provide an alibi defense for the petitioner. The petitioner also claimed to be at a gathering during one window of time. However, trial counsel noted that this "alibi" was only for a two-to-three hour period

in the middle of the time, and he did not feel it was sufficiently viable to support an alibi defense.

Trial counsel did not recall that the petitioner had ever requested a mental health examination or defense, and he saw no signs of a mental defect. He also testified that he was not made aware of any prior mental issues by the petitioner. Trial counsel indicated that, at one point, he had intended to have the petitioner evaluated but then chose not to do so. He felt it was not a prudent decision to pursue such a defense when the defense was that the petitioner did not commit the murder. He believed it would not aid the defense as a mental health defense was inconsistent with the chosen theory of innocence.

Trial counsel also recalled that there were fingerprints found in the blood at the crime screen. The State did not assert that the fingerprints belonged to the petitioner, and trial counsel felt that it was the State's burden to show that. He did not conduct independent testing in an attempt to show that they were not the petitioner's. The State also took fingernail clippings from the victim to test for possible DNA evidence, but none was introduced at trial. Trial counsel again did not attempt to conduct independent testing to determine if the petitioner's or a third-party's DNA was present. While he was sure it was discussed, trial counsel could not recall any specifics conversations with the petitioner about forensic testing. At some point during trial counsel's testimony, the court noted that it had approved an order for DNA testing when the petitioner was represented by initial counsel.

Trial counsel testified that Detective Batey had testified at the preliminary hearing that he had seen "dried red-brown stuff" on the petitioner's boots. However, he did not mention this at the trial. Trial counsel said he chose not to cross-examine the detective on that because he did not feel it would serve to discredit the detective as he could testify he simply forgot to mention it. Moreover, it was not evidence which weighed in favor of the petitioner. Trial counsel was aware that the petitioner's boots had been taken unprotected into the crime scene, and he heavily cross-examined the detective on that matter. In fact, trial counsel noted that he filed a motion to suppress based upon the fact that the boots were introduced unprotected. Trial counsel also specifically testified that he did not request any independent DNA testing be done on the sole's of the petitioner's boots.

Trial counsel also stated that he listened to the petitioner's statement to police to see if there was sufficient evidence to challenge its voluntariness based upon the petitioner's claim of intoxication. However, trial counsel was unable to determine that such evidence was established by the tape and, further, other witnesses said the petitioner was not intoxicated. He also felt that there was not enough evidence to support a request for a jury instruction on intoxication during the trial.

Trial counsel recalled that Henry Dean testified at trial and stated that he had had the petitioner arrested and taken away. However, there was no evidence to confirm this from either the State or the defense. Trial counsel testified that he did question the witness about the fact that there was no proof of the alleged arrest during cross-examination. Trial counsel also testified that he conducted cross-examination of State witnesses regarding discrepancies between the steak knives found in the petitioner's kitchen and the steak knife found in the garage that was used as the murder weapon. Specifically, at the time the knife used to stab the victim was introduced at trial, it was much darker in color than the knives found in the petitioner's kitchen. Even recognizing that the difference in color could have been caused from the fingerprint dust, trial counsel highlighted the discrepancy during cross-examination. He did further note that, although the color was different, the knife found in the trash was otherwise consistent with the knives found in the petitioner's apartment. Trial counsel also believed that he cross-examined Detective Batey on a discrepancy between the search warrant and his trial testimony as to whether there were bloody footprints in the hall outside the victim's apartment. He also testified that he cross-examined Pam Wilson regarding conflicts in her testimony as well. He did not seek a special jury instruction on witness credibility based upon Ms. Wilson's drug usage, but he did request the general credibility instruction based upon the various discrepancies in the record.

Trial counsel testified that he filed a motion to exclude expert testimony regarding a match between the petitioner's boot prints and those found at the crime scene. The motion was successful in that he was able to prevent a Tennessee Bureau of Investigation (TBI) witness from testifying that comparisons between the two indicated a positive match. However, that did not exclude all evidence regarding the boot prints.

The last witness called was the petitioner himself. He began his testimony by noting that he had requested that trial counsel file a Bill of Particulars regarding the different times of death attributed to the victim which were provided in the discovery materials. The petitioner stated that he wanted this issue resolved because he had an alibi for some of the periods of time, specifically on February 18 when he was at a bar-b-que. When trial counsel failed to file the requested motion, the petitioner, acting pro se, filed one with the court, but it was never addressed or resolved.

The petitioner next stated that he had previously been diagnosed as mentally ill in the state of New York. He testified that Pilgrim Psychiatric Hospital declared him insane in 1967 when he was tested there after being charged with murder. The petitioner also stated that he had seen a psychiatrist while he was incarcerated in the Tennessee Department of Correction from 1977 to 2000 on yet another murder charge. He was unable to recall his exact diagnosis but indicated he had been prescribed various medications during the period. The petitioner requested that trial counsel have him evaluated in preparation for trial. Trial counsel did bring the matter to the court's attention, and a continuance was granted for the purpose of seeking an evaluation. However, no evaluation was ever done, despite the fact that the petitioner informed trial counsel that he had trouble remembering things and suffered from "black-out" periods when he drank excessively.

The petitioner also testified that he requested trial counsel to have the fingerprints found in blood at the crime scene tested to show that a third person was responsible for the crime. According to the petitioner, the request was ignored. The petitioner also requested that DNA testing be performed on the blood and nail clippings, but that request was not granted. The petitioner also testified that trial counsel failed to obtain a video surveillance tape from a local liquor store, which the petitioner claimed would show his attire and that he was drunk on June 17 and 18.

The petitioner testified in regard to a discrepancy between the affidavit for the search warrant and testimony at trial. In the affidavit, Detective Batey stated that there were bloody footprints in the hallway outside the victim's door. However, at trial the detective stated that there were no footprints in the hallway. The petitioner acknowledged that trial counsel had filed a motion to suppress evidence, but he failed to bring out the discrepancy at trial. The

petitioner also stated that he wanted DNA testing done on his boots because they were taken unprotected into the crime scene, as seen in various evidentiary photographs. However, it was brought out by the post-conviction court that the State's DNA expert had done such testing on the boots, but the results had been excluded on trial counsel's motion. The petitioner insisted that he wanted his own DNA testing performed and admitted into evidence so trial counsel should have complied with his request. The petitioner testified that he wanted the testing done, "good or bad," because he wanted an open and honest defense. He specifically stated that he believed that the blood on the boots had been planted.

The petitioner also faulted trial counsel for failing to impeach the testimony of Mr. Dean, who testified that he had had the petitioner arrested. He asserted that trial counsel should have introduced the fact that there was no arrest report found. The petitioner also stated that he did not agree with trial counsel's explanation regarding the discrepancy in the color of the knives. He did not believe that the difference was caused by fingerprinting dust. He believed trial counsel should have objected to the admission of the knives. The petitioner also testified that he had informed trial counsel that he was extremely intoxicated the weekend of the murder and requested that a jury instruction be given on intoxication. That instruction was not given. He also faulted trial counsel for failing to object when Ms. Wilson testified that the petitioner had beaten up Ms. Marchbanks, evidence which had been previously excluded after a successful 404(b) motion had been filed by trial counsel. The petitioner also asserted that trial counsel failed to call multiple witnesses for the defense.

On cross-examination, the petitioner acknowledged that if several of the things he requested had been done, it could have resulted in a problem for the defense. For instance, he admitted it would have been a problem for the defense if his DNA had been conclusively established to have been at the crime scene. He also acknowledged that the alibi he had on June 18 would not have been that helpful to his case. He maintained, however, that trial counsel should have pursued the issue of competency. However, he was able to answer a series of questions asked at the post-conviction hearing which indicated that he was competent, and he specifically stated that he never intended to pursue a defense of insanity.

> After hearing the evidence presented, the post-conviction court entered a written order denying relief.

*Cole v. State*, 2013 WL 310208, at **3-6 (Tenn. Crim. App. Jan. 25, 2013).

## III.    ANALYSIS

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996), provides the following with respect to granting a writ of *habeas corpus* to prisoners who are in custody pursuant to a state court judgment:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.*

Where state courts have made factual determinations regarding issues presented for federal *habeas corpus* review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The purpose of federal *habeas corpus* review is to "ensure that state court convictions are given effect to the extent possible under the law," not to conduct a federal re-trial. *Bell v. Cone*, 535 U.S. 685, 693 (2002).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, —, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "[A] habeas court must determine what arguments or theories supported or ... could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* As the Supreme Court has acknowledged: "If this standard is difficult to meet, that is because it is meant to be." *Id. See also Renico v. Lett*, 559 U.S. 766, —, 130 S. Ct. 1855, 1866 (2010) ("AEDPA prevents defendants-and federal courts-from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts."); *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012) ("[T]he Supreme Court has very recently made abundantly clear that the review granted by the AEDPA is even more constricted that AEDPA's plain language already suggests.")(citing *Harrington v. Richter*, 131 S. Ct. at 786).

With these principles in mind, the court will turn to the examination of the claims raised in Cole's petition for habeas relief. In his petition, as supplemented by his Reply/Compliance with Order to Provide a More Definite Statement, Cole alleges fifty (50) instances of ineffective assistance of counsel. (Docket Nos. 1, 26). The respondent argues that only six (6) of Cole's claims have been fairly presented to the state appellate courts. (Docket No. 34 at p. 5).

**A.      Procedurally Defaulted or Unexhausted Claims**

The respondent contends that forty-four (44) of the petitioner's ineffective assistance of counsel[4] claims are procedurally defaulted due to the petitioner's failure to present them to the Tennessee Court of Criminal Appeals on appeal from the denial of post-conviction relief.  (Docket No. 34 at p. 12).

A federal district court will not entertain a petition for writ of *habeas corpus* unless the petitioner has first exhausted all available state remedies for each claim in his petition.  28 U.S.C. § 2254(b).  While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which promotes comity between the states and federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Consequently, as a condition precedent to seeking federal *habeas corpus* relief, the petitioner is required to fairly present his claims to every available level of the state court system.  *Rose v. Lundy*, 455 U.S. 509, 518-20 (1982); *Lyons v. Stovall,* 188 F.3d 327, 331 (6th Cir. 1999).  The petitioner must offer the state courts both the factual and legal bases for his claims.  *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004).  In other words, the petitioner must present "the same claim under the same theory" to the state courts.  *Id.*  It is not enough that all the facts necessary to support a federal claim were before the court or that the petitioner made a somewhat similar state law claim.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

---

[4] Assistant public defender Amy Harwell was initially appointed to represent the petitioner. She continued to represent the petitioner until she was removed from the case at the petitioner's request, at which time trial counsel Michael Colavecchio took over the petitioner's representation.

Both the factual and legal basis for the claim must have been presented to the state courts in order to be considered "fairly presented." *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). The Sixth Circuit has identified four actions that a petitioner can take which are significant to the determination of whether he has properly asserted both the factual and legal bases for his claim, *i.e.*, "fairly presented" that claim:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005)(quoting *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000)).

Once a petitioner's federal claims have been raised in the highest state court available, the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990). In Tennessee, a petitioner need only take his claims to the Tennessee Court of Criminal Appeals in order to fully exhaust his available state court remedies. Rule 39, Tenn. Sup. Ct. Rules; *see also Adams v. Holland*, 324 F.3d 838, 841-44 (6th Cir. 2003).

A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he presents for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir.1987) (citation omitted). Moreover, if a habeas petitioner retains the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(c). Ordinarily, habeas petitions containing unexhausted

claims are dismissed without prejudice in order to permit the petitioner the opportunity to pursue them in state court. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (citing *Rose*, 455 U.S. at 518, 520–22); *see also Rhines v. Weber*, 544 U.S. 269, 275 (2005) (reconfirming the continued relevance of *Rose* under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")).

If, however, an unexhausted claim would be procedurally barred under state law, for instance by a statute of limitations or a state rule barring successive petitions, then the claim is deemed exhausted (because no further state review is available) but procedurally defaulted (because it was not presented to a state court for review), and may not be considered by the federal court on habeas review except under extraordinary circumstances. *Alley v. Bell*, 307 F.3d 380, 385–86 (6th Cir. 2002) (citations omitted); *In re Cook*, 215 F.3d 606, 607–08 (6th Cir. 2000). Specifically, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and actual prejudice resulting from the alleged constitutional errors or, alternatively, that failure to consider the claims will result in a "fundamental miscarriage of justice." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012), *cert. denied*, — U.S. —, 133 S. Ct. 311 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

A habeas petitioner cannot rely on conclusory assertions of cause and prejudice to overcome the adverse effects of a procedural default. *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2003). Rather, he must present affirmative evidence or argument as to the precise cause and prejudice produced. *Id.* "'Cause' is a legitimate excuse for the default, and 'prejudice' is actual harm resulting from the alleged constitutional violation." *Horne v. Bunting*, 2014 WL 7375469, at *13 (N.D. Ohio Dec. 20, 2014)(citation omitted).

The Sixth Circuit Court of Appeals recently determined that the ineffective assistance of post conviction trial counsel may constitute cause to excuse the procedural default of ineffective assistance claims in Tennessee. *See Sutton v. Carpenter*, 745 F.3d 787, 795-96 (6th Cir. 2014); *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). The *Martinez* exception allows inadequate assistance of counsel at initial review collateral proceedings to establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel. *Martinez*, 132 S. Ct. at 1315. However, it does not "concern attorney errors in other kinds of proceedings, including appeals from initial review collateral proceedings." *Id.* at 1320. *See Fowler v. Donahue,* 2014 WL 4829050, at *5 (E.D. Tenn. Sept. 29, 2014 )(citing *Martinez* at 1319)(emphasis added) ("The Supreme Court in *Martinez* thus crafted a narrow exception to *Coleman*: '*Coleman* held that an attorney's negligence in a post-conviction proceeding does not establish cause, and this remains true *except* as to initial-review collateral proceedings for claims of ineffective assistance of counsel *at trial*.'").

Here, respondent argues that Cole had an opportunity to raise his ineffective assistance claims to at least one court for resolution, and the post-conviction court rejected each claim. Because the petitioner failed to present his various allegations regarding counsel's ineffectiveness to the state appellate court, respondent argues that Cole is barred from raising them here; Cole's failure to present those claims to the state appellate courts constitutes a procedural default for which he can show no cause. (Docket No. 34 at p. 13).

The petitioner alleges fifty (50) specific bases on which counsel's performance fell below constitutional standards. (Docket No. 26). The petitioner raised these same fifty (50) claims in his state post-conviction petition. (Docket No. 35, Attach.13 at pp. 12-62, *Petition for Post-Conviction Relief filed 9/23/2010*). These claims were all rejected by the trial court following an evidentiary

16

hearing (Docket No. 35, Attach.13 at pp. 113-27, *Order filed 7/27/2011*).  On appeal from the denial

of post-conviction relief, however, the petitioner raised only six (6) claims.  (Docket No. 35, Attach.

17, *Petitioner's Brief on Post-Conviction Appeal* at pp. 2-3).  The Tennessee Court of Criminal

Appeals addressed those six (6) claims on the merits. (Docket No. 35, Attach. 19, *Opinion* at p. 10).

The petitioner's failure to raise the other forty-four (44) claims to the Tennessee Court of

Criminal Appeals on appeal of the trial court's denial of his ineffective assistance claims constitutes

procedural default of those claims.   Those claims are therefore barred from review unless Cole can

establish cause for the default and resulting prejudice.   However, Cole makes no attempt to establish

cause to overcome the default or resulting prejudice.

To the extent Cole argues that cause for the procedural default of these claims rests with post-

conviction counsel, the *Martinez* exception does not "concern attorney errors in other kinds of

proceedings, including appeals from initial-review collateral proceedings." 132 S. Ct. at 1320 (citing

501 U.S. at 754; *Carrier*, 477 U.S. at 488).   Thus, *Martinez* does not help Cole here because forty

four (44) of his ineffective assistance of counsel claims were defaulted as a result of post-conviction

appellate counsel's failure to brief these issues to the Tennessee Court of Criminal Appeals on appeal

of the denial of Cole's post-conviction petition.  *See Fowler v. Donahue,* 2014 WL 4829050, at *5

(E.D. Tenn. Sept. 29, 2014)("Petitioner is alleging the ineffective assistance of counsel on appeal

from the denial of post-conviction relief and thus *Martinez* is applicable.").

Neither does Cole make a claim of actual innocence.  *Murray v. Carrier*, 477 U.S. 495

(despite an absence of cause and/or prejudice, a procedural default may be excused with a showing

of actual innocence).

Accordingly, the court will not consider those claims that have been procedurally defaulted.

**B.      Ineffective Assistance of Counsel Claims**

Moving to Cole's properly exhausted ineffective assistance of counsel claims, Cole first alleges that his attorney's failure to retain an expert to conduct DNA analysis on evidence from the crime scene was deficient and that Cole was prejudiced as a result of that failure.  Second, the petitioner alleges that his attorney was ineffective in failing to object to Detective Batey's testimony regarding the boot print match.  Third, the petitioner alleges that his attorney was ineffective because he did not request a special jury instruction on the credibility of witnesses.  Fourth, the petitioner contends that his attorney was ineffective by failing to effectively cross examine Henry Dean.  Fifth, the petitioner contends that counsel was inefffective for failing to request a Bill of Particulars regarding the victim's time of death.  Finally, the petitioner claims that counsel was ineffective by failing to cross examine Detective Batey's testimony regarding the substance on Cole's boots.  The court will address each argument in turn.

The Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, guarantees the right of a person accused of a crime to the effective assistance of counsel.   To prevail on a claim of ineffective assistance of counsel, a petitioner must show (1) deficient performance of counsel and (2) prejudice to the defendant.  *See Bell v. Cone*, 535 U.S. 685, 694-95 (2002). Trial counsel's performance is deficient when it falls below an objective standard of reasonableness.   *See Strickland v. Washington*, 466 U.S. 668, 686-87 (1984); *Combs v. Coyle*, 205 F.3d 269, 278 (6th Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000).   In assessing performance, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support

the limitations on investigation." *Strickland*, 466 U.S. at 690-91. Reasonable attorneys may disagree on the appropriate strategy for defending a client. *Bigelow v. Williams,* 367 F.3d 562, 570 (6th Cir. 2004).

The prejudice element requires a petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

A court hearing an ineffective assistance of counsel claim must consider the totality of the evidence. *Strickland,* 466 U.S. at 695. "The determinative issue is not whether petitioner's counsel was ineffective but whether he was so thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996)(quoting *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992)(*en banc*)). "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689.

1.      **Failure to retain an expert to conduct DNA analysis on evidence from the crime scene**

First, the petitioner alleges that his attorney's failure to retain an expert to conduct DNA analysis on evidence from the crime scene was deficient and that Cole was prejudiced by that failure. At the petitioner's post-conviction hearing, trial counsel recalled that fingerprints were found in the blood at the crime screen; however, the State did not assert that the fingerprints belonged to the

petitioner. 2013 WL 310208, at *4. Trial counsel admitted that he did not conduct independent testing in an attempt to show that the fingerprints did not belong to the petitioner. *Id.* The State took fingernail clippings from the victim to test for possible DNA evidence, but none was introduced at trial. *Id.* Trial counsel again did not attempt to conduct independent testing to determine if the petitioner's or a third-party's DNA was present. *Id.* While he was sure it was discussed, trial counsel could not recall any specifics conversations with the petitioner about forensic testing. *Id.*

The petitioner testified that he requested trial counsel to have the fingerprints found in blood at the crime scene tested to show that a third person was responsible for the crime. *Id.* *5. According to the petitioner, the request was ignored. *Id.* The petitioner also requested that DNA testing be performed on the blood and nail clippings. *Id.* On cross-examination, however, the petitioner acknowledged that, if several of the things he had requested had been done, it could have resulted in a problem for the defense. *Id.* *6. For example, he admitted that it would have been a problem for the defense if his DNA had been conclusively established to have been at the crime scene. *Id.*

Finding that the petitioner's arguments with regard to this claim were conflicting, the post-conviction court concluded that Cole had failed to prove this allegation by clear and convincing evidence, nor had he shown prejudice. *Id.* **8-9. When Cole raised this same claim on appeal of the denial of his petition for post-conviction relief, the Tennessee Court of Criminal Appeals reasoned:

> At the post-conviction hearing, the petitioner offered no witnesses or documents to support his bare assertions of ineffective assistance of counsel. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App.1990) (stating that "when a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his

defense, these witnesses should be presented by the petitioner at the evidentiary hearing" in order to show prejudice). He produced no witness concerning what testimony an expert who conducted DNA analysis might have given. The petitioner instead attempted to establish his claims with his own somewhat conflicting testimony. By doing so, he failed to establish that trial counsel's decision not to retain an expert prejudiced his defense. Moreover, the post-conviction court noted in its findings that the State did not introduce DNA evidence linking the petitioner to the crime scene and was not allowed to introduce evidence of the boot print "match" based upon trial counsel's motion to exclude. The court concluded that trial counsel could not be held deficient for failing to retain an expert to conduct independent DNA analysis when there was nothing in the State's evidence to refute.

2013 WL 310208, at *12.

The Tennessee Court of Criminal Appeals correctly applied federal law and reasonably determined the facts in concluding that Cole was not entitled to any relief on this ground. The petitioner is not entitled to relief on the basis of this claim.

**2.      No Certificate of Appealability shall issue as to the petitioner's first ineffective assistance of counsel claim.**

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's first ineffective assistance of counsel claim.

### 3. Failure to object to Detective Batey's testimony regarding the boot print match

Second, the petitioner alleges that his attorney was ineffective in failing to object to Detective Batey's testimony regarding the boot print match. At the hearing on Cole's petition for post-conviction relief, trial counsel recalled that Detective Batey had testified at the preliminary hearing that he had seen "dried red-brown stuff" on the petitioner's boots. 2013 WL 310208, at *4. However, when Batey did not mention this at the trial, counsel said he chose not to cross-examine the detective on that topic because he did not feel it would serve to discredit the detective; moreover, trial counsel believed it was not evidence which weighed in favor of the petitioner. *Id.* at **4-5. Trial counsel was aware that the petitioner's boots had been taken unprotected into the crime scene, and he heavily cross-examined the detective on that matter. *Id.* at *5. In fact, trial counsel noted that he filed a motion to suppress based upon the fact that the boots were introduced unprotected. *Id.* Trial counsel also specifically testified that he did not request any independent DNA testing be done on the sole's of the petitioner's boots. *Id.*

The post-conviction court noted that the testimony at trial failed to support Cole's allegations, despite questioning by defense counsel as to those issues. Thus, the post-conviction court found that the petitioner failed to prove he was entitled to relief on the basis of this claim. (Docket No. 35, Attach. 13, Order filed 7/27/2011 at p. 7). On appeal of the denial of Cole's petition for post-conviction relief, the Tennessee Court of Criminal Appeals agreed:

> With regard to the petitioner's allegation that trial counsel was ineffective for failing to object to Detective Batey's testimony regarding a "match" of the boot prints, the court specifically noted that it struck a reference to a match made by Detective Batey and instructed the jury to disregard. It is unclear from the statement whether this was based upon trial counsel's objection or the court's own motion. Nonetheless, even if the action arose from the trial court

itself, the jury was instructed to disregard the testimony. Thus, as noted by the post-conviction court, no prejudice can be established. The result is the same whether trial counsel actually objected or the court raised it itself-the jury was instructed to ignore the testimony from Detective Batey.

2013 WL 310208, at *12.

The court finds that the state courts correctly applied federal law and reasonably determined the facts in concluding that trial counsel did not render ineffective assistance of counsel when, under the circumstances, he did not object to Detective Batey's testimony regarding the boot print match. The petitioner is not entitled to relief on the basis of this claim.

**4.      No Certificate of Appealability shall issue as to the petitioner's second ineffective assistance of counsel claim.**

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's claim that his attorney was constitutionally ineffective for failing to object to Detective Batey's testimony regarding the boot print match.

**5.      Failure to request a special jury instruction on credibility**

Third, the petitioner alleges that his attorney was ineffective because he did not request a special jury instruction on the credibility of witnesses, specifically with regard to Pam Wilson because of her drug usage. At the petitioner's hearing on his petition for post-conviction relief, trial

counsel testified that he cross-examined Wilson regarding conflicts in her testimony. 2013 WL 310208, at *4. Trial counsel testified that, although he did not seek a special jury instruction on witness credibility based upon Wilson's drug usage, he did request the general credibility instruction based upon the various discrepancies in the record. *Id.*

The post-conviction court denied relief on this claim (Docket No. 35, Attach. 13, Order filed 7/27/2011 at pp. 9-10) and, on appeal of the court's denial of post-conviction relief, the petitioner again alleged that his trial counsel was ineffective for not requesting such an instruction. The Tennessee Court of Criminal Appeals also rejected the petitioner's argument, finding:

> The petitioner also faults trial counsel for failing to request a special jury instruction on the credibility of witnesses, specifically with regard to Ms. Wilson because of her drug usage. Trial counsel acknowledged that he did not request a special instruction be given, but he requested that a general witness credibility instruction be given based on various inconsistencies and discrepancies in testimony at trial. In its findings, the post-conviction court found that a general instruction had been given and denied relief on the allegation. The petitioner again put forth no evidence in support of his argument, other than his own testimony that trial counsel should have requested the instruction be given. The decision not to do so was a tactical decision made by trial counsel. There is no evidence in the record that trial counsel was not prepared for trial in this case. As such, the decision is entitled to great deference, and the petitioner has failed to overcome his burden of proving otherwise. *See Cooper*, 847 S.W.2d at 528.

2013 WL 310208, at *12. Trial counsel made an informed, tactical decision not to request the special instruction. The state court's conclusion that counsel's performance was not deficient in this regard did not amount to an unreasonable application of the law to the facts. The petitioner is not entitled to relief on the basis on this claim.

6.    **No Certificate of Appealability shall issue as to the petitioner's third ineffective assistance of counsel claim.**

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's ineffective assistance of counsel claim based on trial counsel's failure to request a special jury instruction on the credibility of witnesses.

7.    **Failure to effectively cross examine Mr. Dean**

Fourth, Cole posits that his counsel was constitutionally ineffective by failing to effectively cross examine witness Henry Dean.   At his post-conviction hearing, Cole  faulted trial counsel for failing to impeach the testimony of Dean, who testified that he had been responsible for the petitioner's arrest.  2013 WL 310208, at *6.  Cole asserted that trial counsel should have introduced the fact that there was no arrest report found. *Id.* Trial counsel recalled Dean's trial testimony; however, trial counsel noted that there was no evidence to confirm or rebut Dean's testimony from either the State or the defense.  *Id.*   Trial counsel testified that he did question the witness about the fact that there was no proof of the alleged arrest during cross-examination. *Id.* at *4.

In denying Cole relief on this ineffective assistance claim, the post-conviction court found that the petitioner had failed to present any proof, including any reports, supporting his claim. (Docket No. 35, Attach. 13, Order filed 7/27/2011 at p. 9).  When Cole raised this same claim on

appeal of the denial of his petition for post-conviction relief, the Tennessee Court of Criminal Appeals also rejected the petitioner's claim, finding:

> The petitioner also alleges that trial counsel was ineffective for failing to effectively cross-examine witness Henry Dean at trial in order to undermine his credibility. Mr. Dean testified that he had phoned police and had the petitioner arrested. However, no documentation was introduced by the State that the petitioner was ever arrested. Despite the petitioner's assertion to the contrary, trial counsel testified at the hearing that he cross-examined Mr. Dean about the fact that there was no proof that the alleged arrest had occurred. In its findings, the post-conviction court specifically accredited the testimony of trial counsel over that of the petitioner. This court has previously held on numerous occasions that we will not reweigh or reevaluate these type of determinations made by the trier of fact. *See Burns*, 6 S.W.3d at 461. The court also noted that the petitioner had failed to present any proof at the hearing to support his argument. We agree.

2013 WL 310208, at *12. The state court's decision that trial counsel did not render ineffective assistance of counsel in his cross-examination of Henry Dean did not amount to an unreasonable application of the law to the facts. The petitioner is not entitled to relief on this claim.

**8.    No Certificate of Appealability shall issue as to the petitioner's fourth ineffective assistance of counsel claim.**

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's fourth ineffective assistance of counsel claim.

### 9. Failure to request a Bill of Particulars regarding the time of death

Fifth, the petitioner contends that trial counsel was ineffective for failing to request a Bill of Particulars regarding the victim's time of death. At the hearing on Cole's petition for post-conviction relief, Cole began his testimony by noting that he had instructed trial counsel to file a Bill of Particulars regarding the different times of death attributed to the victim in the discovery materials. 2013 WL 310208, at *5. The petitioner stated that he wanted this issue resolved because he had an alibi for some of the periods of time. *Id.* When trial counsel failed to file the requested motion, the petitioner, acting *pro se*, filed one with the court, but it was never addressed or resolved. *Id.*

Trial counsel testified that he was aware that there were three different times of death referenced in the case materials and confirmed that the petitioner requested that he file a Bill of Particulars in order to ascertain the exact time of death. *Id.* at 3. However, trial counsel indicated he saw no need for such a motion, as he believed it added an ambiguity in the State's case. *Id.*

The post-conviction court rejected Cole's ineffective assistance claim on this basis, stating that he was aware of the date of death alleged in the indictment, that his statement to the police acknowledged that he had not seen the victim since June 17, 2007, and the State never claimed the homicide occurred on any other date than June 17, 2007. (Docket No. 35, Attach. 13, Order at pp. 4-5). Thus, the court found that the petitioner had not proven his allegation by clear and convincing evidence and dismissed the claim. (*Id.*) On appeal of the denial of his petition for post-conviction relief, Cole raised this same argument to the Tennessee Court of Criminal Appeals, which held:

> We must also agree with the post-conviction court that the petitioner
> failed to establish his claim of ineffectiveness based upon failing to
> request a Bill of Particulars with regard to the time of death. The

> court noted that the indictment alleged that the homicide occurred on June 17. Trial counsel testified that the discrepancies were based on the time of discovery of the body, when the victim was actually pronounced dead, and the testimony of when witnesses had last seen the victim. The petitioner was aware that the indictment alleged that the murder was committed on June 17, and his statement to police indicated he had not seen the victim since that time. In the presentation of its case, the State argued that the homicide was committed on that day. The petitioner acknowledged he had no alibi for that time period; thus, as found by the post-conviction court, he failed to establish his claim. A Bill of Particulars was not necessary, and trial counsel's decision not to file one was not deficient.

2013 WL 310208, at *13. The state court's decision that trial counsel did not render ineffective assistance of counsel by failing to request a Bill of Particulars regarding the victim's time of death did not amount to an unreasonable application of the law to the facts. The petitioner is not entitled to relief on this claim.

**10. No Certificate of Appealability shall issue as to the petitioner's fifth ineffective assistance of counsel claim.**

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's ineffective assistance of counsel claim based on trial counsel's failure to request a Bill of Particulars.

11.     **Failure to cross examine Detective Batey's testimony regarding the substance on the boots, which counsel knew had been introduced unprotected in to the crime scene**

The final claim of ineffective assistance of counsel by the petitioner is based on counsel's failure to cross examine Detective Batey regarding the substance on the boots. Testifying at his post-conviction hearing, the petitioner stated that he wanted DNA testing done on his boots because they were taken unprotected into the crime scene. 2013 WL 310208, at *5. He specifically stated that he believed that the blood on the boots had been planted. *Id.*

Trial counsel confirmed in his testimony that, at the preliminary hearing, Detective Batey had testified that he had seen "dried red-brown stuff" on the petitioner's boots but noted that Batey did not mention this at the trial. *Id.* *4. Trial counsel said he chose not to cross-examine Batey on his preliminary hearing testimony because he did not feel it would serve to discredit the detective. *Id.* Trial counsel was aware that the petitioner's boots had been taken unprotected into the crime scene, and he heavily cross-examined the detective on that matter. *Id.* In fact, trial counsel noted that he filed a motion to suppress based upon the fact that the boots were introduced unprotected and a motion to exclude expert testimony regarding a match between the petitioner's boot prints and those found at the crime scene. *Id.* *5. The latter motion was successful in that he was able to prevent a Tennessee Bureau of Investigation (TBI) witness from testifying that comparisons between the two indicated a positive match. *Id.*

In dismissing Cole's claim of ineffective assistance based on counsel's failure to cross examine Batey in this regard, the post-conviction court found that trial counsel argued appropriate issues of credibility to the jury and was not successful in convincing them to find in favor of the

defendant.  (Docket No. 35, Attach. 13, Order at pp. 6-7).  The Court of Criminal Appeals likewise reasoned:

> The petitioner's final assignment of ineffectiveness on appeal is that trial counsel should have cross-examined Detective Batey regarding the "dried red-brown stuff on the bottom of the petitioner's boots when he was aware that the boots had been introduced into the crime scene unprotected and could have thereby been contaminated with the victim's blood. However, trial counsel specifically testified that he heavily cross-examined Detective Batey on that matter. Again, the post-conviction court accredited this testimony, and we will not reweigh such determinations. *See id.* Moreover, trial counsel testified that he filed a motion to suppress based upon the fact that the boots were introduced unprotected into the crime scene. Clearly, trial counsel was aware of the existing issue with the boots and took steps to attempt to utilize that information to benefit the petitioner's case. The petitioner has failed to meet his burden.

2013 WL 310208, at *13.   The record fully supports the state court's findings.  The court's application of the *Strickland* standard was not unreasonable.  Again, the petitioner is not entitled to relief on the basis of this claim.

**12.    No Certificate of Appealability shall issue as to the petitioner's final ineffective assistance of counsel claim.**

When the district court denies a ground for relief on the merits in a *habeas corpus* action, a certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Because the petitioner has not made a substantial showing of a constitutional right, a certificate of appealability will not issue with respect to the petitioner's ineffective assistance of counsel claim based on trial counsel's failure to cross examine Detective Batey regarding the substance on the boots.

**IV.     CONCLUSION**

Accordingly, on all grounds, Cole's petition for a writ of *habeas corpus* under 28 U.S.C. § 2254 is hereby **DENIED**.     Rule   4, Rules - - - § 2254 Cases.   The petitioner's claims are **DISMISSED** with prejudice, and a certificate of appealability will not issue as to any of those claims.

An appropriate order will enter.

_____
Todd J. Campbell
United States District Judge